UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUIS ALFREDO APONTE DAVILA,

      Plaintiff,

v.

      CASE No. 8:12-CV-2334-T-TGW

CAROLYN W. COLVIN,[1]
Commissioner of Social Security,

      Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

_____

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 16).

I.

The plaintiff, who was thirty-seven years old at the time of the administrative hearing and who has a high school education or its equivalent in Puerto Rico, was most recently employed as a composite technician (Tr. 31, 45-46, 56, 164). He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to scoliosis, back problems, herniated disc, and neck problems (Tr. 163). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of degenerative disc disease of the cervical and lumbar spine, depression, and anxiety (Tr. 23). He concluded that, with those impairments, the plaintiff can perform less than the full range of light work as follows (Tr. 25):

> [T]he claimant can lift and carry twenty pounds occasionally and ten pounds frequently. He can sit, stand, and walk for about six hours in an eight-hour workday with no limitation in his ability to push or pull with the extremities. The claimant can occasionally climb stairs or ramps but never scaffolds, ropes or ladders. The claimant can occasionally balance, stoop, kneel, crouch, and

> crawl. He can perform unskilled work activity with
> an SVP of 1 or 2 in jobs requiring simple, routine,
> repetitive tasks.

The law judge determined that, with these limitations, the plaintiff is not

capable of returning to past relevant work (Tr. 31). However, based upon the

testimony of a vocational expert, the law judge found that there are light jobs

that exist in significant numbers in the national economy that the plaintiff can

perform, such as small parts assembler, bench assembler, and produce sorter,

and sedentary jobs the plaintiff can perform, such as ticket checker,

food/beverage order clerk, and ampoule sealer (Tr. 32).  The law judge

therefore ruled that the plaintiff was not disabled (Tr. 33).  The Appeals

Council let the decision of the law judge stand as the final decision of the

defendant.

## II.

In order to be entitled to Social Security disability benefits and

supplemental security income, a claimant must be unable "to engage in any

substantial gainful activity by reason of any medically determinable physical

or mental impairment which ... has lasted or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A),

1382c(a)(3)(A).  A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."    42 U.S.C. 423(d)(3), 1382c(a)(3)(D).  In this case, the plaintiff must show that he became disabled before his insured status expired on June 30, 2009, in order to receive disability benefits.  42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.  There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence.  42 U.S.C. 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary

-4-

conclusion is not enough to justify a reversal of the administrative findings."

Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert.

denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the

courts, to resolve conflicts in the evidence and to assess the credibility of the

witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is

the responsibility of the Commissioner to draw inferences from the evidence,

and those inferences are not to be overturned if they are supported by

substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir.

1963).

Therefore, in determining whether the Commissioner's decision

is supported by substantial evidence, the court is not to reweigh the evidence,

but is limited to determining whether the record as a whole contains sufficient

evidence to permit a reasonable mind to conclude that the claimant is not

disabled. However, the court, in its review, must satisfy itself that the proper

legal standards were applied and legal requirements were met. Lamb v.

Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff alleges he suffered a disabling back injury at work in 2006 when he lifted a piece of fiberglass (see Tr. 230). The law judge found that the plaintiff's impairments limited him to a range of light work and, based upon the testimony of a vocational expert, he determined that there were jobs in the national economy in significant numbers that the plaintiff could perform notwithstanding the plaintiff's limitations (Tr. 25, 32).

The plaintiff challenges the law judge's decision on three grounds. He argues that the law judge (1) improperly rejected the opinions of his treating physicians, (2) failed to provide a "function-by-function" assessment of the plaintiff's mental limitations, and (3) did not consider the plaintiff's alleged illiteracy (Doc. 24, p. 2). None of the challenges is meritorious.

A.   The plaintiff's first contention is that the law judge improperly rejected the opinions of treating physician Jorge J. Leal, M.D., and treating clinical psychologist Rosario S. Crane, Ph.D. (id., pp. 5, 11-14).

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not giving them such

weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

1. Dr. Leal, a pain management physician, began treating the plaintiff in August 2009 for chronic low back pain (Tr. 458). In correspondence dated July 8, 2010, Dr. Leal opined that the plaintiff was "unable to pursue any gainful employment" due to disabling pain that Dr. Leal attributed to a disc protrusion in the plaintiff's lumbar spine at L5/S1 (id.).

Additionally, on August 20, 2010, Dr. Leal completed a Physical Residual Functional Capacity Questionnaire in which he opined that the plaintiff can sit and stand/walk for less than four hours during a workday and for only 15 minutes at a time, occasionally carry 10 pounds, and is substantially limited in reaching with his arms, using his fingers, and grasping with his hands (Tr. 460-74). Dr. Leal opined further that the plaintiff would need four unscheduled work breaks daily, the plaintiff's pain would

constantly interfere with his attention and concentration, and the plaintiff would be absent from work more than three times monthly due to his impairment (id.).  Dr. Leal attributed those limitations to LBP (lower back pain) and identified "tenderness" as the sole clinical and objective sign of the plaintiff's impairment (Tr. 460, 461).

The law judge discussed Dr. Leal's treatment notes of the plaintiff and acknowledged Dr. Leal's opinions of July 8, 2010, and August 20, 2010, that the plaintiff had functional limitations which precluded substantial gainful employment (Tr. 28, 30).  The law judge stated that he gave "great weight to [Dr. Leal's] successful treatment of claimant with steroid injections and pain medication, and no weight to [Dr. Leal's] residual capacity assessment" (Tr. 30).  In this regard, the law judge explained (id.):

> [T]he records from Dr. Leal show that claimant had been treated successfully with epidural steroid injections and medication.  The undersigned is cognizant that claimant had been trying to get doctors to complete assessment forms for his disability claim.  He had approached his primary care doctor and was told to see Dr. Leal.  The sedentary limitations given by this doctor are not consistent with his progress notes and/or the other evidence of record. Dr. Leal gave no limitations in his treatment notes for claimant and therefore, his statement that claimant is not able to work is not

> convincing.   It appears that this physician was doing a favor for his patient and trying to help him get disability.

The law judge then expounded with regard to the medical evidence (Tr. 30-31):

> Although the evidence reveals that claimant has low back pain with radiation into the right lower extremity since an injury in 2006, the evidence shows a normal MRI on January 6, 2010 with a mild C4-5 disc bulge but no spinal stenosis. He had a normal MRI of the thoracic spine.  The claimant was noted to have a disc protrusion at L5-S1 with mild stenosis and spondylolisthesis.... The evidence shows that a pain management doctor treated claimant with medication and six steroid injections with significant improvement in his pain level (a level three).

Further, the law judge recounted physical findings on examination that were inconsistent with debilitating functional limitations, such as 5/5 strength in the extremities, normal range of motion, and normal neurological examinations (Tr. 26-27, 29).  The law judge also identified other treating physicians that did not place functional limitations on the plaintiff and noted that a reviewing non-examining physician opined that the evidence did not reflect debilitating impairments (Tr. 28, 29, 30; see Tr. 413-19).  The law judge added that the plaintiff had not regularly sought medication refills, from

which the law judge reasonably concluded that the plaintiff's condition had improved sufficiently that he "did not need his prescribed medication on a regular basis" (Tr. 30; see, e.g., Tr. 480, 497, 500).

Moreover, the law judge identified non-medical evidence that was inconsistent with a debilitating back impairment. Thus, the law judge noted the plaintiff's ability to care for his personal needs and his children, and that he was active in church, including preaching and visiting the elderly to talk about God (Tr. 24, 26).

This explanation is clearly sufficient to show good cause to discount Dr. Leal's opinion of debilitating functional limitations, and it is supported by substantial evidence. Initially, it is noted that the conclusory nature of Dr. Leal's opinion is enough, by itself, to justify the law judge to discount it. Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987); Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 313 (11th Cir. 2007). Thus, Dr. Leal asserts vaguely that the plaintiff has a lumbar disc protrusion that causes "tenderness" in his back (Tr. 460, 461). This is not a meaningful explanation for Dr. Leal's opinion of extreme functional limitations. See Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting

McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)) ("a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work"). Significantly, the plaintiff makes no effort to show how the plaintiff's lumbar disc protrusion creates a specific functional limitation beyond the law judge's residual functional capacity finding.

Furthermore, as the law judge stated, Dr. Leal's own records do not support such extreme limitations (Tr. 30). Thus, Dr. Leal's treatment notes do not contain any severe functional limitations (id.). The notes sometimes say that the plaintiff's daily activity is limited "[b]ecause he can't lift heavy objects" (see, e.g., Tr. 393) and sometimes because "he can't walk [a] long distance" (see, e.g., Tr. 510). These seem to be subjective statements by the plaintiff regarding his capabilities. However, even if they are functional limitations found by Dr. Leal, they certainly do not support the extreme limitations opined by Dr. Leal. Significantly, these were the only functional limitations seen in Dr. Leal's notes. In all events, these limitations, whether they came from the plaintiff or Dr. Leal, are consistent with the law

judge's determination of the plaintiff's residual functional capacity. See Longworth v. Commissioner Social Security Admin., 402 F.3d 591, 596 (6th Cir. 2005) ("a lack of physical restrictions constitutes substantial evidence for a finding of non-disability").

Additionally, Dr. Leal's sparse progress notes do not include findings on examination that substantiate the opined severity of the condition. To the contrary, Dr. Leal's notations indicate that the plaintiff's neurological functioning was intact and that medication alleviated the plaintiff's pain (see, e.g., Tr. 394, 453, 516, 517, 539, 540, 544, 545, 546).

Moreover, there is substantial evidence supporting the law judge's finding that the other evidence of record does not support disabling functional limitations. Thus, as the law judge discussed, the plaintiff's x-rays and MRIs did not reveal disabling impairments (Tr. 230, 239, 272, 274, 357, 359, 429, 430) and numerous physical examinations showed that the plaintiff had a normal range of movement; 5/5 strength; no edema; and no focal,

motor, or sensory deficits (Tr. 230, 283, 285, 287, 291, 317, 318, 370, 484, 499, 501-02).[3]

The plaintiff argues that the law judge's explanation for rejecting Dr. Leal's opinion is "not supported by substantial evidence and not based on proper legal principles" (Doc. 24, p. 12). In this regard, the plaintiff argues that the law judge failed to state how Dr. Leal's opined limitations were inconsistent with his progress notes and the other evidence of record (id.).

This argument is meritless. Thus, the law judge specified that Dr. Leal's treatment notes do not contain any functional limitations and, therefore, Dr. Leal's opinion that the plaintiff "is not able to work is not convincing" (Tr. 28, 30). The plaintiff argues that this is an inadequate basis to discount Dr. Leal's opinion because Dr. Leal should not be expected to document "work-related limitations" when the plaintiff was not working (Doc. 24, p. 13). This contention is frivolous because functional limitations

_____

[3]Although the plaintiff requested and received a cane from Dr. Maria Cariaga (Tr. 318), the physical examination done at that time was essentially normal and, thus, did not substantiate the need for a cane (id.). Notably, Dr. Cariaga subsequently observed the plaintiff not using the cane (Tr. 367). Importantly, even if the plaintiff needed to use a cane, that would not preclude him from performing the sedentary jobs of ticket checker, food and beverage order clerk, and ampoule sealer that were identified by the vocational expert (Tr. 60, 63).

– such as standing, sitting, walking, and lifting – are obviously pertinent regardless of whether a claimant is working.

Additionally, Dr. Leal's progress notes are inconsistent with his opinion of disability because they do not include objective findings on physical examination that support such extreme limitations (see, e.g., Tr. 393-94, 452-53, 509, 516-17).   Underscoring the lack of medical evidence supporting Dr. Leal's opinion is his meager identification of "tenderness" as the objective and clinical sign of his alleged debilitating impairment (Tr. 461).  Moreover, the plaintiff does not refute the law judge's statement that Dr. Leal's records show that the plaintiff "had been treated successfully with epidural steroid injections and medication" (Tr. 30, 31), which is also inconsistent with Dr. Leal's opined disabling limitations.

The plaintiff alleges further that the law judge failed to identify "the other evidence of record" that was inconsistent with Dr. Leal's limitations (Doc. 24, p. 12). This contention is similarly meritless because, as discussed supra, pp. 9-10, the law judge's decision is replete with evidence that is inconsistent with Dr. Leal's opined extreme limitations.

The plaintiff also argues, in a conclusory manner, that "the ALJ failed to properly consider any of the factors listed in 20 C.F.R. §§404.1527 and 416.927–length of treatment, frequency of examination, nature and extent of the treatment relationship, support of opinion afforded by medical evidence, consistency of opinion with the record as a whole, and specialization of the treating physician-in weighing the opinion of Dr. Leal" (Doc. 24, p. 13). This contention is baseless.

Initially, it is noted that the law judge "is not required to explicitly address each of [the §404.1527] factors" in the decision. Lawton v. Commissioner of Social Security, 431 Fed. Appx. 830, 833 (11th Cir. 2011). Regardless, the law judge's decision encompasses all of those factors. Thus, the law judge acknowledged Dr. Leal's specialty in pain management, his long-term treatment relationship with the plaintiff, Dr. Leal's successful treatment of the plaintiff's pain symptoms, and that Dr. Leal's opinion of disability was not supported by Dr. Leal's own treatment notes, the medical evidence, and the record as a whole (see Tr. 26-30).

The plaintiff argues further there "is absolutely no basis in the record" for the law judge's comment that Dr. Leal's opinion of disability

appears to be given in an attempt to help the plaintiff obtain disability (Doc. 24, p. 13). As the law judge noted (Tr. 30), the plaintiff's treating physician repeatedly declined the plaintiff's requests to complete disability paperwork and instead directed the plaintiff to Dr. Leal (see Tr. 499-502), who opined that the plaintiff had extreme functional limitations that were unsupported by the medical evidence of record. The law judge could reasonably infer from those circumstances that the plaintiff's primary physician was unwilling to certify that the plaintiff had disabling impairments and that Dr. Leal's opinion of disability was a favor to his patient (Tr. 30).

Regardless, the plaintiff makes more of this comment than is there. Thus, that circumstance clearly was not a significant factor in the law judge's decision to give Dr. Leal's opinion no weight, as the law judge stated that Dr. Leal's opinion was not convincing due to the absence of corroborating evidence from Dr. Leal and the record as a whole (id.). The law judge simply made the comment, as an aside, that "[i]t appears" Dr. Leal's opinion was a favor for the plaintiff who was trying to obtain disability (see id.). Thus, that comment was inconsequential.

-16-

The plaintiff also contends that the law judge should have accepted Dr. Leal's opined limitations because they "were supported by other opinion evidence of record" (Doc. 24, p. 12). Initially, it is noted that it is insufficient to merely identify evidence that could support a finding of disability; rather, the plaintiff must identify evidence that compelled the law judge to find disability because the law judge's resolution of conflicting evidence is entitled to deference. See Adefemi v. Ashcroft, supra; see also Lawton v. Commissioner of Social Security, supra, 431 Fed. Appx. at 833 ("While the record does contain some evidence that is contrary to the ALJ's determination, we are not permitted to reweigh the importance attributed to the medical evidence."). The plaintiff, however, has not identified any medical opinions credited by the law judge that support Dr. Leal's opined extreme limitations, and he certainly has not identified any evidence that compelled the law judge to accept Dr. Leal's opinion. See id.

In this regard, the plaintiff cites to psychologist Dr. Rosario Crane's opinion that the plaintiff could work only part-time due to pain, and a recommendation from "Ancillary Medical Services" that the plaintiff should avoid prolonged sitting or standing of more than one hour (Doc. 24, p. 12).

On their face, neither of those opinions is commensurate with the extreme functional limitations opined by Dr. Leal.

Furthermore, the notation from "Ancillary Medical Services" that advised the plaintiff to avoid prolonged sitting or standing is not even inconsistent with the plaintiff's residual functional capacity because it does not limit the plaintiff to one hour of sitting or standing in a workday, but rather recommends that the plaintiff switch positions every so often (see Tr. 487). Moreover, as discussed infra, p. 24, there is no evidence that this opinion was offered by an acceptable medical source and, therefore, the law judge was not compelled to accept that opinion. 20 C.F.R. 404.1513, 416.913.

Additionally, Dr. Crane's conclusory opinion that the plaintiff is limited to part-time work due to pain was properly rejected by the law judge, see infra, pp. 19-22. Therefore, the plaintiff cannot rely on a discounted opinion to bolster Dr. Leal's opinion. In sum, the plaintiff has failed to show that the law judge's decision to give no weight to Dr. Leal's opinion was erroneous.

2. The plaintiff contends next that the law judge improperly discounted the opinion of the treating clinical psychologist, Dr. Crane (Doc.

24, pp. 13-14). The plaintiff underwent psychotherapy with Dr. Crane in 2009 (Tr. 342).

Dr. Crane completed on January 12, 2010, a Treating Source Mental Status Report in which Dr. Crane opined that the plaintiff had major depressive disorder, but that it did not cause disabling mental functional limitations (Tr. 420-22). Thus, Dr. Crane stated that the plaintiff's thought process and content, concentration, orientation, and remote memory were all within normal limits and, despite a limitation on recent memory, the plaintiff "can understand what he is told, his concentration is fine, [and] his social interaction is fine" (id.). However, Dr. Crane also opined that, due to "[b]ack pain," the plaintiff "will not be able to work 8 hours per day. [H]e may be able to work part time" (Tr. 421, 422). Dr. Crane did not specify that the opined limitation would last at least the requisite 12 months, nor did he specify the functional limitations underlying the opinion that the plaintiff's pain precluded gainful employment.

The law judge summarized Dr. Crane's treatment notes concerning the plaintiff and noted Dr. Crane's opinion that the plaintiff can

work only part-time (Tr. 27, 29). The law judge stated in this regard (Tr. 29-30):

> The opinion of this doctor is not consistent with the
> evidence of record thus far and no explanation has
> been given for any deterioration in claimant's
> functioning. It appears that this doctor limited
> claimant due to his physical symptoms, which is
> outside of his realm of treatment. With regard to
> mental problems, the claimant was able to
> understand what he was told, and his concentration
> and social interaction were unremarkable. The
> undersigned is cognizant that the issue of disability
> is reserved for the Commissioner and the statement
> that claimant is unable to work on a full time basis
> is not consistent with earlier treatment records.
> Therefore, minimal weight has been given this
> opinion.

The law judge's explanation for discounting this opinion is more

than adequate and it is supported by substantial evidence. Thus, in

discounting Dr. Crane's opinion of disability the law judge appropriately

considered that it was premised upon back pain, which is far outside the realm

of Dr. Crane's area of treatment. <u>See</u> 20 C.F.R. 404.1527(c)(5),

416.927(c)(5) (less weight given to an opinion of a source who is not a

specialist regarding the medical issues he is opining about). Notably, Dr.

Crane is not a medical doctor, and he was not asked to opine on the plaintiff's

physical condition (see Tr. 420 (emphasis added) "Treating Source Mental Status Report").

Additionally, Dr. Crane does not identify objective medical findings or functional limitations supporting the opinion that the plaintiff's back pain is of disabling proportions (see Tr. 420-22). To the contrary, Dr. Crane's statement that the plaintiff's concentration and social functioning are fine is seemingly inconsistent with his opinion that the plaintiff suffers from debilitating pain.

Moreover, the only references in Dr. Crane's treatment notes regarding an inability to work were the plaintiff's subjective complaints to Dr. Crane in July and August of 2009 that he cannot work due to pain (Tr. 403, 404). Those comments are inconsistent with the plaintiff's previous statements to Dr. Crane that he was looking for a job and, in particular, the plaintiff was upset when he was not offered a job he wanted (Tr. 399, 400, 401, 402). As the law judge noted (Tr. 29-30), Dr. Crane offers no explanation for the alleged sudden deterioration in the plaintiff's condition. The law judge therefore reasonably concluded that Dr. Crane's opinion of disability was based on the plaintiff's self-reports of pain (see Tr. 29, 31),

which the law judge did not find fully credible (Tr. 30-31). Notably, the plaintiff has not challenged the law judge's credibility determination. Therefore, that circumstance further undermines the probative value of Dr. Crane's opinion of disability.

Finally, the law judge also properly considered that Dr. Crane's opinion that the plaintiff could work only part-time was not even a medical opinion, but rather opined on a vocational issue reserved to the Commissioner. 20 C.F.R. 404.1527(d), 416.927(d); Lanier v. Commissioner of Social Security, supra, 252 Fed. Appx. at 314. In sum, substantial evidence supports the law judge's determination to give minimal weight to Dr. Crane's opinion of disability.

The plaintiff, in challenging the law judge's decision to discount Dr. Crane's opinion, argues that that the law judge "did not consider subsequent records such as Dr. Leal's assessment and the fact that Plaintiff was advised to avoid prolonged sitting and standing as factors that would support Dr. Crane's treating source opinion" (Doc. 24, pp. 13-14). This argument is meritless.

First, the law judge properly focused on records made contemporaneous with, or previous to, Dr. Crane's opinion in order to determine the alleged justification for Dr. Crane's opinion that the plaintiff was unable to be gainfully employed. Furthermore, the law judge did consider and, as discussed above, properly rejected Dr. Leal's opinion of disability. Therefore, the plaintiff cannot buttress Dr. Crane's unsupported opinion with the rejected opinion of another physician. Additionally, advice to avoid prolonged sitting and standing does not support Dr. Crane's opinion that the plaintiff cannot be gainfully employed due to pain. To the contrary, it indicates that the plaintiff is employable, but that he should switch positions periodically. In sum, the plaintiff's meager challenge to the law judge's rejection of Dr. Crane's opinion of disability is meritless.

Finally, the plaintiff mentions in passing that the law judge "failed to discuss the limitations expressed by American Medical Care that Plaintiff should avoid prolonged sitting and standing" (Doc. 24, p. 14, <u>citing</u> Tr. 487). The plaintiff, citing to <u>Sharfarz</u> v. <u>Bowen</u>, 825 F.2d 278, 279 (11th Cir. 1987), which holds a law judge is required to state the weight given to "medical opinion," asserts that this is reversible error (Doc. 24, p. 14).

-23-

The treatment note from "Ancillary Medical Services" (Tr. 486), which was discussed above, advised the plaintiff to "avoid prolonged sitting or standing (> 1 hour)" (Tr. 487). The basis for the recommendation is unclear, although it appears to be premised upon the plaintiff's subjective complaint of "brief paresthesia in legs ... with prolonged sitting or standing" (see Tr. 486).

The plaintiff fails properly to develop this argument. Thus, the Scheduling Order directed the plaintiff to support his discrete challenges "by citations to the record of the pertinent facts and by citations of the governing standards" (Doc. 15, p. 2). Here, the plaintiff does not identify the medical professional who made this notation, or even identify what additional limitations should have been included in the residual functional capacity as a result of this recommendation. The plaintiff also has not shown that the recommendation was more than a temporary limitation, since it was not repeated in any other treatment note from that office (Exs. 25F, 26F, 29F). Therefore, the argument is properly forfeited.

In any event, there is no evidence that this recommendation was a "medical opinion." Thus, with the exception of one appointment, the

plaintiff was treated at American Care by nurse practitioners or physician's assistants (Tr. 476, 478, 480, 482, 484, 488, 499, 501, 503, 569, 571, 573), and the pertinent notation does not contain a physician's name or signature. Therefore, the likelihood is that the recommendation was not made by an acceptable treating source, 20 C.F.R. 404.1502, 416.902; Lawton v. Commissioner of Social Security, supra, 431 Fed. Appx. at 834 ("an acceptable source" does not include nurses and physicians' assistants) and, consequently, it is not a "medical opinion." Lawton v. Commissioner of Social Security, supra. As a result, Sharfarz v. Bowen, supra, 825 F.2d at 279, which holds that a law judge is required to state the weight given to "medical opinions," is inapposite. Moreover, the law judge did not commit reversible error by not specifically referencing this recommendation because a law judge is not required in his decision to refer to every piece of evidence. See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

In sum, the plaintiff has failed to show that the law judge erred by not crediting the medical opinions of Dr. Leal or Dr. Crane, or by failing to specifically reference in the decision the recommendation of "Ancillary Medical Services."

B. The plaintiff's second argument is that the law judge failed to provide a "function-by-function" assessment of the plaintiff's mental limitations, in violation of Social Security Rulings 96-8p and 85-15 (Doc. 24, pp. 14-16). The plaintiff's argument is unpersuasive.

Social Security Ruling 96-8p states the Social Security Administration's policies regarding the assessment of residual functional capacity. Social Security Ruling 85-15 sets forth the mental functions necessary to perform unskilled work, which are the mental ability to: understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers and usual work situations; and to deal with changes in a routine work setting." 1985 WL 56857 at *4 (S.S.A.). The plaintiff contends that the law judge's failure to do a written assessment of each of those factors violated Social Security Rulings 96-8p and 85-15 (Doc. 24, p. 15).

In the first place, the Eleventh Circuit has held that Social Security Rulings do not have the force of law. Miller v. Commissioner of Social Security, 246 Fed. Appx. 660, 662 (11th Cir. 2007) (agency rulings do not bind the court); B.B. on behalf of A.L.B. v. Schweiker, 643 F.2d 1069,

1071 (5th Cir. 1981) ("the agency's ruling does not bind this court"). Furthermore, Social Security Ruling 96-8p merely seems to provide guidance in assessing a claimant's residual functional capacity. Therefore, a failure to follow Social Security Ruling 96-8p would not warrant the reversal of an administrative decision, absent a distinct mis-evaluation of the evidence.

In any event, the law judge did not violate Social Security Rulings 96-8p or 85-15. Thus, the law judge found that the plaintiff had severe mental impairments of depression and anxiety (Tr. 23) and addressed the plaintiff's work-related abilities on a function-by-function basis when he addressed the four pertinent functional areas and rendered a finding about the degree of limitation as to each category, in accordance with 20 C.F.R. 404.1520a and 416.920a. Specifically, the law judge found that the plaintiff's mental impairments caused no difficulty in activities of daily living; mild difficulties in social functioning; and no episodes of decompensation (Tr. 24). Additionally, although noting that the evidence was not consistent with serious mental limitations, the law judge gave the plaintiff "the benefit of the doubt" by finding that the plaintiff had moderate limitations in his concentration, persistence or pace, secondary to complaints of pain (Tr. 31).

Further, in order to accommodate those limitations, the law judge limited the plaintiff to "unskilled work activity with an SVP of 1 or 2 in jobs requiring simple, routine repetitive tasks" (Tr. 25), and included those limitations in the pertinent hypothetical question to the vocational expert.[4]

Those statements show that the law judge substantially complied with Social Security Rulings 96-8p and 85-15. As the Eleventh Circuit has held, there is nothing in SSR 96-8p that requires the law judge to make a written assessment of each of the factors. See Freeman v. Barnhart, 220 Fed. Appx. 957, 960 (11th Cir. 2007) (SSR 96-8p does not require the law judge to address every limitation in the decision; only to consider those factors); Castel v. Commissioner of Social Security, 355 Fed. Appx. 260, 263 (11th Cir. 2009) (law judge performed an adequate function-by-function analysis because the decision showed that the law judge considered the plaintiff's medical condition as a whole).

---

[4]Additionally, by finding that the plaintiff could perform unskilled work, it is implicit that the law judge found that he could perform the work functions at issue. See SSR 85-15, 1985 WL 56857 at *4 (S.S.A); see, e.g., Carson v. Comm. of Soc. Sec., 440 Fed. Appx. 863, 864 (11th Cir. 2011) ("While, the ALJ did not specifically refer to [plaintiff's] ability to walk or stand, the ALJ did limit [plaintiff's] exertional level of work to 'light work.'").

Notably, the plaintiff's cursory argument makes no attempt to show that the plaintiff had greater functional limitations than the law judge found to be caused by the plaintiff's depression and anxiety. To the contrary, opinions and treatment notes from the plaintiff's medical providers, including treating psychologist Dr. Crane, indicated that the plaintiff did not suffer from mental impairments that would preclude him from performing the mental demands of unskilled work. For example, Dr. Crane opined that the plaintiff's thought process and content, concentration, orientation, and remote memory were all within normal limits; that the plaintiff "can understand what he is told" and that the plaintiff's "social interaction is fine" (Tr. 421-22). Progress notes from other treating sources similarly indicate unremarkable mental clinical findings (see, e.g., Tr. 297, 317, 365, 369, 550). Notably, the plaintiff's mental health records were reviewed four times by three psychologists, none of whom even opined that the plaintiff had a severe mental impairment.

In sum, the law judge complied with Social Security Rulings 96-8p and 85-15 by discussing thoroughly the evidence of the plaintiff's mental condition, identifying those areas in which he found a limitation, and

incorporating those limitations into the plaintiff's residual functional capacity. The plaintiff makes no attempt to show that the plaintiff had greater functional limitations from mental impairments. Therefore, this argument is meritless.

C. The plaintiff's final argument is that the law judge failed to consider the plaintiff's alleged illiteracy (Doc. 24, p. 16). Specifically, the plaintiff argues that the vocational expert's testimony that there were jobs in the national economy that the plaintiff could perform does not constitute substantial evidence of the plaintiff's non-disability because the pertinent hypothetical question omitted his alleged illiteracy (id., pp. 18-19).

A vocational expert's testimony will constitute substantial evidence if the law judge poses a hypothetical question which comprises all of the claimant's impairments. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). Of course, a law judge is not required to include limitations in the hypothetical question that are unsupported. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

Here, substantial evidence supports the finding that the plaintiff was literate. Accordingly, the law judge did not err by omitting illiteracy

-30-

from the pertinent hypothetical question. See id. Furthermore, consideration of the plaintiff's limited English proficiency was included in the pertinent hypothetical question, as the law judge directed the vocational expert to assume in the pertinent hypothetical question a person with the plaintiff's education (Tr. 58-60).

The law judge noted in the decision that the plaintiff was educated in Puerto Rico and obtained the equivalent of a GED (Tr. 25; see also Tr. 46). The record shows that the plaintiff first came to the continental United States as a young adult and worked at various jobs in several states for many years (Tr. 155-59). At the hearing, the plaintiff and his attorney acknowledged that the plaintiff can understand some English, and the plaintiff testified that he can read in English "something short" (Tr. 42, 52; see also Tr. 398). The vocational expert, who was present at the hearing by telephone, heard the plaintiff's testimony (Tr. 55). Therefore, the vocational expert was aware that the plaintiff received his formal education in Puerto Rico and that the plaintiff had a limited knowledge of English.

The law judge told the vocational expert to assume for the pertinent hypothetical question (Tr. 58-59):

a person the claimant's age, education and work experience who can lift up to 20 pounds occasionally, lift or carry up to 10 pounds frequently and light work as defined by the regulations, stand or walk for approximately six hours per eight hour work day, and sit for approximately six hours per eight hour work day with normal breaks, never climb ladders, ropes or scaffolds. Occasional the other postural limitations including the climbing of ramps or stairs, balancing, stooping, crouching, kneeling and crawling. Work is limited to unskilled work that's SVP 1 or 2, simple routine or repetitive tasks.

The vocational expert testified that, with those limitations, the plaintiff could perform work available in significant numbers in the national economy, such as the light jobs of small parts assembler, bench assembler, produce sorter, and the sedentary jobs of ticket checker, food and beverage order clerk, ampoule sealer (Tr. 59-60).

As indicated, the plaintiff argues that the pertinent hypothetical question was deficient because it did not include the plaintiff's alleged illiteracy. However, the plaintiff has not shown that the evidence compelled such a finding.

Social Security regulations consider an individual illiterate if he "cannot read or write a simple message.... [g]enerally, an illiterate person has

had little or no formal schooling." 20 C.F.R. 404.1564(b)(1), 416.964(b)(1).

Importantly, the regulations distinguish "illiteracy" from an "inability to

communicate in English," the latter of which is considered "an educational

factor" because the English language is generally learned at school.   20

C.F.R. 404.1564(b)(1), (5); 416.964(b)(1), (5).   The plaintiff successfully

completed the equivalent of a high school education in Puerto Rico, and he

understands and can read some English. Therefore, he is not illiterate

according to the Social Security regulations.   20 C.F.R. 404.1564(b)(1),

416.964(b)(1).

Further, since the ability to communicate in English is an

"education" factor, by directing the vocational expert to assume a person of

the plaintiff's education, the law judge adequately advised the vocational

expert to consider job opportunities for an individual with limited proficiency

in English. See, e.g., Turner v. Commissioner of Social Security, 182 Fed.

Appx. 946, 950 (11th Cir. 2006) (hypothetical question did not need to specify

functional illiteracy because the law judge included in the hypothetical the

plaintiff's educational level).

-33-

Additionally, it is noted that, because of limitations arising from the plaintiff's mental impairment, the law judge also asked the vocational expert to assume that the plaintiff was restricted to unskilled work comprised of simple, routine repetitive tasks (Tr. 59). This restriction also eases demands upon the plaintiff's language skills.

The plaintiff premises the contention that he was illiterate upon a provision of HALLEX, a Social Security Administrations Hearings, Appeals and Litigation Law Manual, that defines illiteracy as the inability to read or write in the English language (Doc. 24, p. 19, citing HALLEX I-5-3-12 (III)(A)). However, HALLEX is an internal manual that provides policy and procedural guidelines; it was not promulgated in accordance with the procedural requirements for the creation of binding regulations and, therefore, has no legal force. Moore v. Apfel, 216 F.3d 864, 868-69 (9th Cir. 2000); Schweiker v. Hansen, 450 U.S. 785, 789 (1981) ("[T]he Claims Manual is not a regulation. It has no legal force, and it does not bind the SSA."). Furthermore, the plaintiff certainly has not identified any legal authority that HALLEX trumps the pertinent federal regulations, 20 C.F.R. 404.1564(b)(1), 416.964(b)(1), which define literacy more broadly than HALLEX.

-34-

Moreover, the law judge could find, even under the HALLEX standard, that the plaintiff was literate because the plaintiff testified that he understands some English, can read short notes in English, and the plaintiff's work history indicated an ability to carry out different jobs in several states of this predominantly English-speaking country.

Finally, even if the law judge erroneously omitted illiteracy from the pertinent hypothetical question, the plaintiff has not shown that it was more than harmless error. Thus, the pertinent hypothetical question limited the plaintiff to "unskilled work activity with an SVP of 1 or 2 in jobs requiring simple, routine, repetitive tasks" and, as the Commissioner notes, with regard to unskilled work "literacy or the ability to communicate in English has the least significance" (Doc. 27, p. 19). Specifically, 20 C.F.R. Pt. 404, Subpart P, App. 2, §200.00(g) explains:

> [T]he primary work functions in the bulk of unskilled work relate to working with things (rather than data or people) and in these work functions at the unskilled level, literacy or the ability to communicate in English has the least significance.

Therefore,  a substantial vocational range of unskilled work remains for younger individuals who are unable to communicate in English.  Id.

The plaintiff has not made any meaningful attempt to show that including illiteracy in the hypothetical question would have changed the testimony of the vocational expert. As stated above, the only jobs identified by the vocational expert were unskilled jobs. There is nothing in the record that indicates the plaintiff's limited English proficiency would prevent him from performing those jobs. Notably, although the plaintiff was represented at the hearing by an attorney who cross-examined the expert (Tr. 61-63), his attorney did not ask whether the plaintiff would be unable to perform any of the unskilled jobs identified by the vocational expert due to a limited proficiency in English. As indicated, the record shows that the plaintiff performed several jobs in this predominantly English-speaking country for many years, and there is no evidence that his performance was impeded by an inability to communicate in English. Therefore, the plaintiff failed to carry his burden of showing that his limited English proficiency would prevent him from performing the jobs identified by the vocational expert. Williams v. Barnhart, 140 Fed. Appx. 932, 936 (11th Cir. 2005).

It is, therefore, upon consideration

ORDERED:

-36-

That the decision of the Commissioner of Social Security is

hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this

Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this $5^{\underline{th}}$ day of

February, 2014.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

-37-